IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BURCH BOWEN,

        Plaintiff,                No. CIV S-00-1451 LKK PAN P

    vs.

JOSEF TREIBER, et al.,

        Defendants.          <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff claims that defendants violated his rights under the Eighth Amendment by acting with deliberate indifference to his serious medical needs by failing to properly treat his inguinal hernia.  Plaintiff also claims that his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., were violated by his removal from a pay number based on his light duty status, and he raises pendent state law claims under Cal. Govt. Code § 845.6, on the ground that defendants failed to furnish or summon immediate medical care.  This matter is before the court on defendants' motion for summary judgment.  Defendants all seek summary judgment on the grounds that there is no evidence that any of them acted with deliberate indifference to plaintiff's hernia or to his medical needs following therefrom.

/////

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

/////

On May 27, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

ANALYSIS

I.  Facts[1]

At all times relevant to this action plaintiff has been an inmate at Folsom State Prison (FSP).  Defendants Drs. Isidro Cardeno, Joseph Torruella, Cong Le and Paramvir Sihota, were physicians employed by the California Department of Correction and Rehabilitation (CDCR) and assigned to FSP during the relevant period.  Defendant Dr. William Kuykendall was a dentist employed by the CDCR and assigned to FSP during the relevant period.  Defendants Michael Shull and Josef Treiber were employed by the CDCR as supervisors in the Prison Industries Authority (PIA) during the relevant period.  Defendant Laurence Campoy was employed by the CDCR as the manager of the PIA during the relevant period.

On October 19, 1998, while working at the Tool and Die shop of the PIA at FSP, plaintiff lifted an object and injured his groin.  (Defendant's Separate Statement of Undisputed Facts in Support of Motion for Summary Judgment, or in the Alternative Summary Adjudication (DUF), filed November 18, 2005, ¶ 3-4.)  Plaintiff reported this injury to defendant Treiber, his supervisor at that time.  (Plaintiff's Exhibit 1, at 12.)

On October 25, 1998, defendant Dr. Le examined plaintiff regarding his injury and diagnosed plaintiff with an inguinal hernia.[2]  At this time, defendant Le prescribed a hernia

---

[1] Except as otherwise noted, these facts are not in dispute.

[2] Defendant Le contends that he diagnosed plaintiff with a small reducible left inguinal hernia.  (DUF ¶ 5, 7; see also Exhibit 2 to Plaintiff's Rebuttal to Defendants' Separate Statement of Undisputed Facts in Support of Motion for Summary Judgment, or Plaintiff's Opposition to Alternative Summary Adjudication (PRDUF), filed February 24, 2006.)  Plaintiff contends that defendant Le diagnosed him with a strangulated hernia, see Plaintiff's Opposition to Motion for Summary Judgment and Alternative Summary Adjudication; Memorandum of Points and

4

aid belt and advised plaintiff to return if the belt did not work. Defendant Le did not request surgical repair or restrict plaintiff's activities at this time. (DUF ¶ 5, 8.) The accepted medical treatment for a reducible inguinal hernia includes wearing a hernia aid belt, restricting activities which cause abdominal strain, and surgical repair. (See Declaration of Cong Le, attached as Exhibit B to Declaration of Catherine Woodbridge in Support of Motion for Summary Judgment or in the Alternative Summary Adjudication ("Woodbridge Decl."), filed November 18, 2005, ¶ 8; Declaration of Joseph Torruella, attached as Exhibit C to Woodbridge Decl., ¶ 10; Declaration of Isidro Cardeno, attached as Exhibit F to Woodbridge Decl., ¶ 9; Declaration of Paramvir Sihota, attached as Exhibit G to Woodbridge Decl., ¶ 9.)

On December 18, 1998, plaintiff returned for medical treatment and was evaluated by defendant Dr. Torruella. Defendant Torruella diagnosed plaintiff with a recurrent large direct left inguinal hernia. Defendant Torruella also noted that the hernia was reducible and noted a scar on plaintiff's left groin. At this time, defendant Torruella placed plaintiff on limited light duty and restricted plaintiff from lifting more than ten pounds until his hernia had been repaired for six months. Defendant Torruella additionally noted in plaintiff's medical file that the hernia aid belt was unsuccessful and requested authorization for hernia repair from the Medical Authorization Review (MAR) Committee.[3] (Id., at ¶ 10-16, see also Plaintiff's Exhibit 4 to PRDUF.)

/////

---

Authorities (POMSJ), filed February 24, 2006, at 8, but he provides no evidence to support this contention.

[3] An MAR Committee is established within each correctional treatment center's (CTC) service area, and is composed of staff physician representatives from each institution within the service area. (Cal. Admin. Code., tit. 15, § 3352.) The MAR Committee meets to approve or disapprove requests for medical services, and approved cases are forwarded with supporting documentation to the Health Care Review (HCR) committee. (Id.) The HCR Committee, which minimally consists of two Assistant Deputy Directors, a Chief Medical Officer, and two physicians, then meets to approve or deny services approved by the MAR Committee. (Id. at § 3352.1.)

Some time between plaintiff's December 18, 1998 meeting with defendant Torruella and January 11, 1999, plaintiff informed his supervisor, defendant Michael Shull, that he had suffered a hernia as a result of the lifting accident in October 1998.[4]  (DUF ¶ 17.)  On or about December 28, 1998, defendant was removed from his position at the Tool and Die shop and his "pay number" because of his light duty status.  On January 11, 1999, defendant Michael Shull prepared an Employer's Report of Occupational Injury or Illness.  (Plaintiff's Exhibit 1, at 16.)

On February 6, 1999, defendant Torruella noted in plaintiff's medical file that plaintiff needed documentation for medically unassigned status and that he should be medically unassigned until surgery.  (Plaintiff's Exhibit 3.)  On February 22, 1999, plaintiff met with defendant Dr. Cardeno and informed defendant Cardeno that he was waiting for surgical evaluation of his hernia and that he was unable to continue working.  Defendant Cardeno issued to plaintiff a medically unassigned chrono for two months pending a surgical consultation for his hernia.  (DUF ¶ 22, 25.)

On April 28, 1999, plaintiff met with defendant Dr. Sihota and requested an extension of his medically unassigned status for two additional months pending a decision on his worker's compensation claim.  Defendant Sihota granted plaintiff's request.  (Plaintiff's Exhibit 5; Defendants' Exhibit G, ¶ 5.)  On September 9, 1999, S. Vega, who is not a defendant in this case, noted in plaintiff's medical record that plaintiff's surgery was pending a MAR review scheduled for September 16, 1999.  (Plaintiff's Exhibit 6.)  On September 15, 1999, plaintiff again met with defendant Sihota, who noted a small bump in plaintiff's inguinal region and diagnosed a small reducible hernia.  (Id.)  Defendant Sihota referred plaintiff again to the MAR Committee for review and gave plaintiff a chrono to be medically unassigned for two additional

---

[4] Plaintiff contends that he notified defendant Shull on December 18, 1998, however he provides no evidence to support this contention. (POMSJ, at 11.)  Defendant Shull contends that plaintiff notified him on or about January 11, 1999.  (Declaration of Michael Shull, attached as Exhibit D to Woodbridge Decl., ¶ 3, 5, 6.)

1  months. (Defendants' Exhibit G, ¶ 7-8.) On September 16, 1999, the MAR committee deferred
2  plaintiff's surgery for his hernia pending receipt of his workman's compensation number.
3  (Plaintiff's Exhibit 6.)
4        On December 6, 1999, defendant Torruella noted in plaintiff's medical file that
5  plaintiff was medically unassigned for three months due to a large inguinal hernia and placed
6  plaintiff on medically unassigned status dating back to December 18, 1998. On December 16,
7  1999, plaintiff went to a consultation for surgery and received papers and orders for consultation
8  with an MTA. On December 17, 1999, an unknown person, who is not a defendant in this
9  action, noted in plaintiff's file, "Authorization request for surgical repair to UM nurse." On
10 January 4, 2000, plaintiff met again with defendant Torruella, who reversed his co-pay from
11 December 6, 1999 and noted that plaintiff was awaiting surgery for his left inguinal hernia.
12 (Plaintiff's Exhibits 7, 8)
13       Plaintiff's Health Record Report dated January 10, 2000 stated under "past
14 medical history" that plaintiff had a significant history over several years of bilateral inguinal
15 hernia repair. (Plaintiff's Exhibit 10, at 1.) On January 25, 2000, plaintiff was admitted to the
16 California Medical Facility (CMF) for surgical repair of his hernia and a non-defendant physician
17 performed the surgery on January 26, 2000. Plaintiff was discharged on January 28, 2000. (Id. at
18 3.) Plaintiff's discharge summary, dated January 28, 2000, stated, "Physical Examination: The
19 presence of a scar of previous surgery was noted. A left inguinal bulge was noted and was
20 reducible, consistent with a left inguinal hernia, recurrent." (Id.)
21 /////
22 /////
23 /////
24 /////
25 /////
26 /////

## II. Plaintiff's Claims

### A. Eighth Amendment[5]

In order to prevail on his Eighth Amendment claim plaintiff must prove that he had a "serious medical need" and that defendants acted with "deliberate indifference" to that need. Estelle v. Gamble, 429 U.S. 97, 105 (1976). A medical need is serious if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting Estelle, 429 U.S. at 104, 97 S.Ct. 285). Deliberate indifference is proved by evidence that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Mere negligence is insufficient for Eighth Amendment liability. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Whether a defendant had requisite knowledge of a substantial risk is a question of fact and a fact finder may conclude that a defendant knew of a substantial risk based on the fact that the risk was obvious. Farmer, 511 U.S. at 842. While the obviousness of the risk is not conclusive, a defendant cannot escape liability if the evidence shows that the defendant merely refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true. Id. Deliberate indifference specifically to medical needs "may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003).

/////

---

[5] The defendants initially contend that a state worker's compensation claim is plaintiff's sole and exclusive remedy because plaintiff's original injury occurred while he was at working within the scope of his duty at the Tool and Die Shop. This contention is without merit. See Jensen v. City of Oxnard, 145 F.3d 1078, 1084 n.3 (9th Cir. 1998) ("personal injury claims that implicate constitutional rights are not preempted by state worker's compensation acts.")

1    "Prison officials are deliberately indifferent to a prisoner's serious medical needs
2 when they deny, delay, or intentionally interfere with medical treatment." Hallett v. Morgan, 296
3 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted).  However, delay
4 in providing medical treatment to a prisoner does not constitute deliberate indifference unless the
5 delay causes substantial harm. Shapely v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404 (9th
6 Cir. 1985).  Additionally, "a plaintiff's showing of nothing more than 'a difference of medical
7 opinion' as to the need to pursue one course of treatment over another [is] insufficient, as a
8 matter of law, to establish deliberate indifference." Jackson v. McIntosh, 90 F.3d 330, 332 (9th
9 Cir. 1996) (as amended) (1996).

10    Plaintiff contends that defendants Le, Torruella, Cardeno, and Sihota acted with
11 deliberate indifference when they failed to provide him with surgical repair for his hernia for
12 fifteen months after his diagnosis.  It is undisputed that defendants Le, Torruella, Cardeno, and
13 Sihota had subjective knowledge of plaintiff's hernia, and that the hernia constituted a serious
14 medical need.  It is also undisputed that plaintiff's corrective surgery was performed fifteen
15 months after the date of his initial diagnosis, and that during that time plaintiff experienced
16 various symptoms resulting from his hernia.  (PRDUF ¶ 60.)  Defendants Le, Torruella, Cardeno,
17 and Sihota contend that they were not deliberately indifferent to plaintiff's hernia because they
18 each took appropriate actions to treat plaintiff or alleviate his symptoms while he awaited
19 approval for the surgery.

20    The undisputed evidence shows the following: On October 25, 1998, defendant Le
21 diagnosed plaintiff with an inguinal hernia and prescribed the hernia aid belt.  On December 18,
22 1998 defendants Torruella requested MAR authorization for surgical repair of plaintiff's hernia.
23 On February 22, 1999, defendant Cardeno issued plaintiff a medically unassigned chrono.  On
24 April 28, 1999, defendant Sihota extended the chrono and, on September 15, 1999, defendant
25 Sihota re-extended the chrono and sent a second request for MAR authorization for surgical
26 /////

repair of plaintiff's hernia. Plaintiff's surgery was subsequently approved and plaintiff received his surgery on January 26, 2000.

Plaintiff contends that defendants' actions demonstrated deliberate indifference to his hernia because each defendant knew of his hernia and could have provided his surgery but instead deliberately delayed his medical treatment. However, in each case, plaintiff has failed to provide any facts or evidence from which a reasonable jury could conclude that defendants Le, Torruella, Cardeno, or Sihota intentionally delayed or denied him appropriate medical care for his hernia. To the contrary, the undisputed facts show only that each of these defendants took steps to treat plaintiff's hernia, obtain surgery for plaintiff, or alleviate the symptoms he was experiencing by restricting his activities. Any delay in plaintiff receiving his surgery resulted from the time that it took the MAR committee to authorize the procedure.[6]

Moreover, plaintiff's evidence is insufficient to show that any delay in receiving the surgery caused him substantial harm. Plaintiff provided no evidence that the hernia worsened from the date of diagnosis to the date of surgery. While plaintiff did state that he experienced several symptoms resulting from his hernia, the undisputed evidence shows that defendants Le, Torruella, Cardeno, and Sihota each took various steps to alleviate his symptoms while waiting for MAR approval of the surgery.

This court finds that plaintiff has not presented evidence sufficient to create a triable issue of material fact as to whether defendants Le, Torruella, Cardeno, and Sihota deliberately delayed the surgical repair of his hernia. Defendants Le, Torruella, Cardeno, and Sihota are therefore entitled to summary judgment on plaintiff's Eighth Amendment claim.

---

[6] Plaintiff contends that surgical repair of a hernia is not a procedure that requires MAR approval, and that the defendants' insistence on requesting MAR approval amounts to intentional delay of necessary medical treatment. Plaintiff bases this belief on language in Cal. Admin. Code tit. 15, § 3350.1, listing procedures not allowed without approval, and the absence of hernia repair on that list. However, it is not clear to this court that MAR approval for such surgery is not required and, in any event, plaintiff provides no evidence that the defendants made the requests for MAR approval with the intention of delaying the medical treatment of his hernia.

Plaintiff contends that defendant Kuykendall acted with deliberate indifference to his hernia. Plaintiff's claim against defendant Kuykendall arises from his position as Chief Medical Officer and supervisor of the four other defendant doctors. Plaintiff contends that, in this position, defendant Kuykendall "turned a blind eye" to his delayed treatment and failed to send him to a specialist for consultation. Defendant Kuykendall seeks summary judgment on the ground that he is employed only as a medical staff dentist with the CDCR, has never served as the Chief Medical Officer, and has never seen or treated plaintiff for his hernia. The court finds no evidence that defendant Kuykendall ever served as Chief Medical Officer or had any connection with treatment of plaintiff's hernia. Plaintiff's evidence is insufficient to create a triable issue of material fact as to whether defendant Kuykendall was deliberately indifferent to plaintiff's serious medical needs. Defendant Kuykendall is therefore entitled to summary judgment on plaintiff Eighth Amendment claim.

B. Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

The Americans with Disabilities Act of 1990 (ADA), codified at 42 U.S.C. § 12101 et seq., prohibits discrimination against disabled individuals regarding employment and the receipt of public services.[7] Title I of the ADA governs discrimination in employment. As a prerequisite for maintaining an ADA action for employment discrimination, a plaintiff must file a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC). See 42 U.S.C. § 12117(a) (incorporating enforcement procedures from 42 U.S.C. § 2000e-5).

---

[7] Title II of the ADA discusses discrimination in the receipt of public services, and Title III discusses the receipt of public accommodations and services operated by private entities. The Ninth Circuit has held that Title II of the ADA does not apply to employment because Congress intended for employment disputes to be brought only under Title I of the ADA. Zimmerman v. State of Oregon Dept. of Justice, 170 F.3d 1169, 1173 (9th Cir. 1999) citing Decker v. University of Houston, 970 F.Supp. 575, 578 (S.D.Tex.1997). "Obtaining or retaining a job is not 'the receipt of services,' nor is employment a 'program[ ] or activit[y] provided by a public entity.'" Id. at 1176. Title III governs only discrimination in the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182. Neither of these statutes are implicated by plaintiff's ADA claim, which specifically involves an employment dispute.

See also Santa Maria v. Pacific Bell, 202 F.3d 1170, 1176 (9th Cir. 2000). Section 2000e-5 requires that "a charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except [when] the person aggrieved has initially instituted proceedings with a State or local agency ... such charge shall be filed ... within three hundred days."

Plaintiff contends that defendants Treiber, Shull, and Campoy violated his rights under the ADA by refusing to accommodate his medical requirement for light duty, which defendant Torruella had ordered in light of plaintiff's hernia. Plaintiff also contends that, although he was still able to perform his duties in his position at the Tool and Die Shop,[8] the defendants removed him from this paid position and he was forced to work in the FSP Culinary with no pay. (Id. at ¶ 44, 48.) Defendants Treiber, Shull and Campoy all seek summary judgment on plaintiff's claim under the ADA on the grounds that plaintiff did not file the necessary charge with the EEOC in order to proceed under Title I of the act. Defendants also contend that Title II of the ADA does not apply to plaintiff's claim because the claim involves employment discrimination, which is governed only by Title I. Plaintiff has provided no evidence that he complied with the filing requirement under Title I of the ADA. Defendants Treiber, Shull, and Campoy are, therefore, entitled to summary judgment on plaintiff's claim under the ADA.

C. State Law Claim under Cal. Govt. Code § 845.6

Plaintiff raises a state claim under Section 845.6 of the California Government Code based on defendants' alleged failure to furnish or summon immediate medical care for his hernia. Since defendants are entitled to summary judgment on all of plaintiff's federal claims,
/////

---

[8] The court notes that plaintiff contradicts this assertion with statements in his reply that suggest he was unable to work due to the hernia. (PRDUF ¶ 27; POMSJ at 29.) The contradiction is immaterial to resolution of this claim.

the court will recommend that the district court decline to exercise jurisdiction over all state claims against all defendants.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendants' November 18, 2005 motion for summary judgement be granted on plaintiff's claims under the Eighth Amendment and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; and

2. The court decline to exercise jurisdiction over all state claims against all defendants. See 28 U.S.C. § 1367(a).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 25, 2006.

UNITED STATES MAGISTRATE JUDGE

17
bowe1451.57